Caruthers, J.,
delivered the opinion of the court.
At November term, 1853, of Knox county court, the will of Curd Cox was proved,' and at December term, letters testamentary were issued to the plaintiffs, after qualification and the execution of bond. At January term, 1854, a petition was filed by the defendant, in the name of himself and wife, asking that the probate be set aside, and the case sent to the circuit court for the trial of an issue of “will or no will” in the case. Citation was .issued, and at February ses *713 sions tbe contestants entered into bond for costs, with Mathew Rhodes, Pleasant R. Grills and "Win. B. Coap-land his sureties, and the case was certified to the circuit court of Enos. At the first, being the February term of the circuit court, on the affidavit of Hill, one of the plaintiffs, a rule was made upon the defendants to give other and sufficient security for the prosecution of their suit, or justify their present security, at the next term, or “their suit would be dismissed.” At the next June term, John Rhodes took the pav/per oath, and was allowed to prosecute his contest, but no order was made in relation to the sureties. At February term?. 1855, the issue was tried, and verdict in favor of the will, and judgment was given against the defendants and their original sureties for all the costs, amounting to $234, for which execution issued.. This was superseded, and at the next term the supersedeas was discharged.
The question now raised upon the record is, whether the sureties in the original prosecution bond, are liable for any costs, and, if any, to what extent. It is strenuously argued that they were entirely discharged by operation of law, when the pauper oath was taken, and if mistaken in that, it is. more confidently insisted that they could only he liable for the costs which had then accrued, and not for those which were subsequent. The last position, to say the least -of it, is very plausible, and at first blush might séem to be correct; but upon examination it will be found equally unsustainable. The bond of the sureties; the obligation into which they entered, to pay all costs, in case of failure by the contestants to succeed on the trial of the issue upon the will, was in no way affected by any thing *714 which, occurred afterwards. The opposite party was dissatisfied with them, as they were considered insufficient to make the costs secure, and upon mating affidavit to that effect, had a rule made upon the defendants to give other securities, or show that the present were sufficient. Instead of doing either the pauper oath was taken, and the rule discharged. So the plaintiff was obliged to be content with the security already given. It is true that the defendants had a right to commence the contest as paupers if they could conscientiously take the oath, that they were not able to secure the cost. Act 1851-2, ch. 77, § 3. But this they could not do when their friends were willing to obligate themselves for them in the proper bond. The only effect of the rule was to force the defendants to strengthen the security already given, by proving its sufficiency, or giving others who were better, or if neither could be done, then to avail themselves of the provisions made for the benefit of the poor in the pursuit of their supposed rights. The effect of this, was not to discharge the security already given but to save the suit from the operation of the rule requiring additional security. It is difficult to see upon what principle this proceeding could operate to discharge the sureties from the plain obligation of their bond. There is no statute giving to it that effect, and surely there is nó rule of law that can do it. They had it in their power at any time to relieve themselves from farther responsibility by adopting the mode pointed out by the act of 1822, ch. 42, for the benefit of sureties for costs. But this they failed to do, and of course their liability, as fixed by their bond, continued to rest upon them. The bond contained no condi *715 tion to be void in case tbe principal pauperised pending tbe suit, and none sucb is j prescribed by tbe law.
It is true, that tbe act referred to, Car. & Nich., 654, for tbe benefit of sureties for the prosecution of suits, has a proviso, to tbe effect, that if tbe party is not able to give “counter-security” where a rule has been made upon him to that effect, at tbe instance of tbe original sureties, be may proceed with his suit by taking tbe pauper’s oath, and in sucb case the former sureties shall not be bound for tbe costs accruing, after the notice given. But this is a proceeding by tbe opposite party under tbe act of 1829, ch. 33, Car. & Nich., 657, to obtain additional security, and not release that already given. It is not intended to release tbe former but to justify or strengthen it. It would be absurd, and beyond tbe powers of tbe court perhaps by an express order, to give it that effect. But as no sucb order was made in this case, that question does not arise.
If the sureties, who now complain, bad become dissatisfied, and desired to be relieved of their responsibility, on account of what then transpired, or for any other reason, tbe said act of 1822, cb. 42, offered to them a simple and easy mode to accomplish that object. Having failed to resort to that, their liability continued, and judgment was properly rendered against them for tbe whole costs, according to their bond under tbe act of 1848, cb. 62, § 1.
An objection has been suggested to tbe legality of tbe proceeding by which tbe suit was allowed to progress under the pauper law, on tbe oath of tbe husband, without that of tbe wife, who was also a party with *716 him. That was proper, as we have decided in another case at the present term, that where a husband and wife are parties, it is only necessary for the oath to be taken by the former, but it is otherwise where this relation does not exist between joint parties; in that case all must take the oath required.
The judgment will be affirmed.